## JANE TILLEY *vs*. ANDREW J. DAMON.

A justice of the peace in and for one county has no authority to direct a warrant under Rev. Sts. *c*. 49, to a constable of a town in another county, although the respondent resides there: and an arrest by such constable upon such warrant being illegal, a promise of marriage made by the respondent while under such arrest is void.

Not only is a direct promise void, if made under duress and an illegal arrest, but so is an admission thus made of a former promise, and the jury cannot inquire whether such admission was made because it was true, or because the party was under duress.

THIS action was for breach of a promise to marry the plaintiff, accompanied with her seduction. At the trial in the court of common pleas, before *Mellen*, J. there was evidence tending to prove that the plaintiff was delivered of a bastard child, on the 9th of June, 1849, of which the defendant was the father; that on her complaint a warrant was issued against the defendant under Rev. Sts. *c*. 49, by Levi Taylor, Esq. a justice of the peace in and for the county of Hampshire, directed to the constables of the town of Ludlow, in the county of Hampden, where the defendant lived; that Albert Fuller, one of such constables, there arrested the defendant on said warrant, and carried him before said Taylor, in the county of Hampshire, and while so under arrest, the defendant made the declarations upon which the plaintiff relied, as amounting to a promise to marry her. The defendant contended that if this were so, his promise was not binding because he was then under an illegal arrest, and duress; but the presiding judge instructed the jury, among other things not material to be reported, that such arrest was legal, and the promise not therefore invalid, and the jury returned a verdict for the plaintiff. The defendant excepted to this ruling.

*G. Ashmun & H. Morris*, for the defendant.

*W. G. Bates*, for the plaintiff.

MERRICK, J. The defendant contends that the promise of which evidence was given by the plaintiff at the trial, and upon which she relied to maintain her action, was invalid because it was extorted from him by duress and false impris-

onment. The legality of his arrest and detention under the warrant, by force of which he was held in custody at the time when that promise was made, depends upon the authority of Taylor who was a justice of the peace in and for the county of Hampshire, to direct it to the constables of Ludlow, in the county of Hampden. The jury were advised that he could lawfully do so; but he had no such right. The warrant should have been addressed to, and served by, a civil officer of Hampshire. The statute relative to the maintenance of bastard children, which authorizes justices of the peace to receive the complaint of the mother, and when certain required preliminaries shall have first been observed, to issue a warrant against the person whom she accuses of being the father of her child, does not point out the place where it shall be served, nor designate the officer to whom it shall be addressed, and by whom it shall be executed. Rev. Sts. *c.* 49. But these omissions are elsewhere supplied, and it is the duty of the magistrate in all things to conform to every positive rule and provision of law. In the particular case of the escape or absence of the accused party from the county where the warrant is issued against him, the course of proceeding is plainly and expressly prescribed. The warrant is not to be so framed as to run out of the county, but the officer who then receives it, and to whom it is then directed, may pursue and search for the offender beyond its limits, and apprehend him wherever he may be found in the State. Rev. Sts. *c.* 135, § 3. *St.* 1846, *c.* 266.

The jurisdiction of justices of the peace is of limited extent, and nothing is ever presumed in its favor. Their authority is all derived from the various provisions contained in particular statutes, and they have no power beyond what is in that way conferred upon them. *Bridge* v. *Ford,* 4 Mass. 641; *Commonwealth* v. *Leach,* 1 Mass. 59; *Fisher* v. *Shattuck,* 17 Pick. 252. In general they must execute their office within the bounds of the counties in and for which they are severally appointed; and they cannot regularly or legally do any judicial act in other places. 2 Hale P. C. 50; Bac. Ab. Justice of the Peace, § 5. The particular instances in which other

and different provision is specially made, evinces very distinctly that in all other cases the legal processes, which they issue, have force and are to be executed only within their respective counties. Thus, under the statute which in this commonwealth chiefly confers upon them their official authority and defines the duties which belong to their office, they are empowered to hold courts, to exercise a certain civil and criminal jurisdiction within their own counties, and to issue all writs, processes and warrants, necessary or proper to carry into effect the powers granted to them. No general rule is there prescribed, or direction given how or where those processes shall be served, but in reference to a very small number or class of them there is a very distinct and special provision. Writs of *scire facias* against executors and administrators, and against bail in certain limited and specified cases have been distinguished from all other processes, and are allowed to run into any county in which the defendant may be found. §§ 16–17. There would be no occasion for such a particular provision if the authority of the magistrate extended beyond his county and through the state. And it is a fair and necessary implication from it that all other processes have no such extent, but run only in the county where the magistrate from whom it emanates resides. There are other statutes which may be referred to, without reciting them in detail, which afford the same indication, and lead to the same conclusion. *St.* 1837, *c.* 210; *St.* 1838, *c.* 121–147.

The warrant issued by Taylor was therefore erroneously directed to the constables of Ludlow, and conferred on them no right to serve and execute it. The arrest and detention of the defendant under it was consequently unauthorized and illegal, and his imprisonment false and unjustifiable. This was held otherwise in the court below, and the verdict therefore against the defendant cannot be sustained.

It is unnecessary to consider other questions presented in the bill of exceptions, since the present decision is decisive of the merits of the action in reference to the promise of which evidence was given and relied on at the trial.

*New trial granted.*

At the new trial in the court of common pleas, before *Mellen*, J. the plaintiff introduced evidence tending to show that the defendant while under arrest as before stated, not only then promised to marry her, but also made certain declarations indicating that he had promised to do so before his arrest, and she contended that if the jury so found, they should return a verdict for the plaintiff. The defendant contended that his declarations made under such arrest were not binding, being made under duress; but the presiding judge ruled that although the defendant's promise to marry, made under such arrest, was void, yet if the defendant did then acknowledge that there had been a previous promise to marry, and this on account of its truth, and not under the influence of his duress and illegal detention, the jury might find a verdict for the plaintiff, which they did. The defendant excepted to the instructions. The case was argued and determined at the September term, 1854.

*G. Ashmun & H. Morris,* for the defendant.

*W. G. Bates,* for the plaintiff.

MERRICK, J. The question particularly discussed and considered when this case was before us upon a former bill of exceptions, related to the authority of the officer to execute the warrant he held against the defendant. It was then determined that a warrant issued by a justice of the peace in the county of Hampshire, under the statute concerning the maintenance of bastard children, conferred no legal authority upon the constable in the town of Ludlow, in the county of Hampden, to whom it was directed, to serve and execute it; and that the arrest and detention of the defendant under it, was therefore unauthorized and illegal. And it was held as a necessary consequence from this conclusion, that no evidence of any promise made by the defendant while he was detained in custody and imprisoned under and by virtue of that warrant, by an officer who had no right to serve it, was admissible upon the trial of the action in behalf of the party by whom that imprisonment was occasioned. And that such evidence having been allowed to be introduced, notwithstanding the express objection of the defendant to it, constituted a suffi-

cient reason for setting aside the verdict which was rendered against him. This latter determination is not less applicable to the ruling of the court upon the evidence which the plaintiff was permitted to adduce and submit to the jury upon the last trial, than it was to that which he was erroneously allowed to lay before them upon the former one. There is no distinction between a promise to marry, and an acknowledgment that such promise had been made upon some former occasion, upon which the rejection of the former and the admissibility of the latter can be justified and defended. The general principle is, that neither acts done, nor declarations or admissions made, by a party under duress, shall be allowed, against his objection, to operate injuriously to him. He is not bound by a contract, nor held responsible for concessions or acknowledgments made in such an exigency. He may avoid his deed when so executed, if he will, and the law will reject the evidence of his confessions if objected to, when they were induced by means of, or uttered while he was subject to such unlawful constraint. Bac. Ab. Title, Duress; 1 Greenl. Ev. §§ 193, 219, 225. It is a presumption sanctioned by the law, that confessions made under such circumstances, are the result of fear, apprehension, and of the consequences to result from the force, violence, or compulsion applied. And because it is impossible to measure the extent of the controlling influence which such causes may exert, and of course impossible to determine whether any, or what reliance ought to be placed, or what effect should justly be given to acts done, or to declarations made by a party held in such condition, it has come to be an established principle of law that the evidence of whatever has transpired while a party is under duress, shall, upon his objection, as to the party by whom it was occasioned, be altogether disallowed and rejected. *Regina* v. *Baldry*, 2 Den. C. C. 430; 5 Cox, C. C. 523.

The instructions given by the presiding judge upon the trial of this action did not proceed upon this, but upon a different principle. Evidence of the defendant's confession that he had on some previous occasion promised the plaintiff to marry her, appears to have been introduced in her behalf.

and laid before the jury at a stage of the trial, when there was no proof before the court, and no opportunity had been afforded for offering it, that such promise was made or extorted from him while he was under duress. The period, therefore, had not then arrived when he could have objected to the admissibility of this evidence of his own confession; and no foundation had been laid upon which such an objection could then have been sustained, or with any propriety suggested. He was, therefore, constrained to wait until proof of such fact could be adduced, and then to ask the court to give appropriate instructions to the jury, concerning the effect which the law would allow to be given to evidence of confessions induced or uttered while the party was deprived of his rights, and unlawfully restrained of his liberty. This course was pursued. But the instructions finally given and to which exception is taken, assured the jury that it was competent for them to consider the evidence concerning the acknowledgment or confession of the defendant, that he had on former occasions promised the plaintiff to marry her, and to allow it, under certain qualifications stated, to influence their decision and lead to the verdict they were to render. This instruction necessarily implied that the statements and declarations of a party while under duress, are admissible in evidence against his objection, and on behalf of the person who caused his subjection to unlawful restraint. That proposition, as has already been shown, cannot be maintained. Nor can the admission of the evidence, or the effect which the jury were permitted to give to it, be justified by reason of the qualification which accompanied the general instruction. The jury were, indeed, advised to give no weight to this evidence, and that it was entitled to none, unless upon the whole proof before them they were satisfied that the declarations and admissions of the defendant were made not in consequence of the unlawful detention or imprisonment, but solely from his own conviction and consciousness of their truth, and with the intention on that account to give them utterance. But this qualification is not recognized or sanctioned by any legal authority as a basis for the introduction of evidence of conces

sions or acknowledgments induced by such means, or procured under such circumstances. It is the impossibility of ascertaining, and the peculiar danger of error and mistake in attempting to measure, the extent or degree of influence upon the mind which may have been the consequence of unjustifiable restraint and illegal imprisonment, which makes it as reasonable as it is necessary for the security of personal rights, that the law should altogether exclude from the hearing, in the consideration of the jury, whatever is said by a party while he is subject to duress. Whenever, therefore, as in the present case, in consequence of the peculiar course of the trial, evidence of the acknowledgments and declarations of a party may have been introduced before he has had an opportunity of showing under what circumstances they were uttered or induced, it must be the duty of the court, after the explanation has been afforded and proof offered to support the objection, to advise the jury how they should treat, and in what manner they should dispose of it. And in reference to the facts reported in the bill of exceptions before us, the instruction should have been, that if the jury were satisfied, that the acknowledgments and admissions of the defendant were made while he was unlawfully restrained and held in duress, all the evidence concerning those acknowledgments and admissions, was incompetent and inadmissible, and should be wholly rejected and disregarded by them when deliberating upon the case, and forming their opinion in relation to the verdict to be rendered. As they were not thus advised, and their verdict which was for the plaintiff, may have been found upon an erroneous principle, it cannot be sustained, but must be set aside and a *New trial granted.*